UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMSPSHIRE

U.S. DISTRICT COURT
DISTRICT OF NH
FILED

2018 JUN 13 P 2:46

EVAN W. GRAY,

              Plaintiff,

v.

CHESTER L. GRAY III, as Executor and Trustee,

              Defendant.

Case No. 1:18-CV-522-JD

**COMPLAINT**

PLAINTIFF EVAN W. GRAY, as and for his Complaint against Defendant Chester L. Gray III, states:

**THE PARTIES**

1. Plaintiff is a citizen and resident of the State of New York.

2. Plaintiff is a son of Barbara J. Gray ("BJG"), who died on April 9, 2013, and Chester L. Gray, Jr. (the "Decedent"), who died on April 26, 2017. Prior to his death, and at all times relevant to the facts below, the Decedent was a citizen and resident of the State of New Hampshire. Prior to her death, and at all times relevant to the facts below, BJG was a citizen and resident of New Hampshire.

3. Defendant is a citizen and resident of the Commonwealth of Massachusetts.

4. Defendant is the executor of the Estate of the Decedent (the "CLG Estate") and the trustee of the Chester L. Gray, Jr., Trust of 1996 (the "CLG Trust").

5. Defendant also is a son of BJG and the Decedent, and is a brother of Plaintiff.

## JURISDICTION AND VENUE

6. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, based on diversity of citizenship and an amount in controversy that exceeds $75,000, exclusive of interest and costs.

7. This court has personal jurisdiction over the Defendant based on (i) Defendant's appointment and service as executor of a New Hampshire estate, the CLG Estate, the administration of which is pending in New Hampshire Probate Court, (ii) Defendant's appointment of a New Hampshire resident agent in connection therewith, and (iii) Defendant's service as trustee of a New Hampshire trust, the CLG Trust, pursuant to Section 546-B:2-202(a) of the New Hampshire Revised Statutes.

8. The court also has personal jurisdiction over the Defendant pursuant to Section 510:4.I of the New Hampshire Revised Statutes.

9. Venue is proper pursuant to 28 U.S.C § 1391.

## FACTUAL BACKGROUND

10. The Barbara J. Gray Trust of 1996 (the "BJG Trust") was formed under, and is governed by, New Hampshire law.

11. Plaintiff is a remainder beneficiary of the BJG Trust.

12. Prior to the death of BJG on April 9, 2013, the BJG Trust was revocable, and BJG and the Decedent were serving as co-trustees thereof.

13. Upon the death of BJG on April 9, 2013, the BJG Trust became irrevocable, and the Decedent became the sole trustee thereof.

14. The CLG Trust was formed under, and is governed by, New Hampshire law.

15. Prior to the death of the Decedent on April 26, 2017, the CLG Trust was revocable, and the Decedent was the sole trustee thereof and had complete control over the assets and income of the CLG Trust.

16. At the time of the death of BJG on April 9, 2013, the BJG Trust held substantial assets in a brokerage account at Merrill Lynch in Manchester, New Hampshire.

17. At the time of the death of BJG on April 9, 2013, the CLG Trust held assets in a brokerage account at Merrill Lynch in Manchester, New Hampshire, which, upon information and belief, had a total value equal to about three-fifths (3/5) as much as the total value of the assets in the BJG Trust at that time.

18. The BJG Trust provides that following the death of BJG, the remainder of the trust property would be held in trust for the benefit of her husband, the Decedent, during his lifetime, and that after his death, the remainder of the trust property would be distributed outright equally among her three sons (the "Remainder Beneficiaries"), including Plaintiff.

19. The lifetime trust for the Decedent under the BJG Trust provided, in pertinent part, for: (i) the payment by the trustee (the Decedent) to the Decedent of the income from the trust in convenient installments during his lifetime; (ii) discretionary payment of amounts by the trustee (the Decedent) to the Decedent from the principal of the trust from time to time as "necessary for his support and maintenance in his accustomed manner of living and for his health care, after taking into account the income payable to him [thereunder] and all other resources available to him," but that such power to use principal for the Decedent's benefit "shall not be exercised without the consent of an independent trustee or one of [BJG's] children;" and (iii) a

3

limited power of the Decedent, as lifetime beneficiary, to withdraw a limited amount of the principal of the trust in each calendar year provided that the Decedent's election to do so was "evidenced by a written notice to the trustee" and that "[t]his power shall be exercisable only on the first business day of each month during the year."

20. During the time that the Decedent served as sole trustee of the BJG Trust (i.e. from the death of BJG on April 9, 2013, to the death of the Decedent on April 26, 2017), the Decedent had fiduciary duties, including fiduciary duties of loyalty, fairness, impartiality, and prudence which required the Decedent to manage and invest the property of the BJG Trust in a reasonably productive manner that fairly reflected the interests of all beneficiaries of the trust, including the Decedent's interest as income beneficiary and the interests of Plaintiff as a Remainder Beneficiary.

21. During the time that the Decedent served as sole trustee of the BJG Trust, and contrary to the fiduciary duties of the Decedent, the Decedent managed and invested the property of the BJG Trust for the exclusive benefit of the Decedent himself, as life beneficiary, and in disregard, and to the detriment, of the interests of Plaintiff as a Remainder Beneficiary.

22. In particular, during the time that the Decedent served as sole trustee of the BJG Trust, rather than diversifying the investments of the trust in a manner that fairly reflected the interests of Plaintiff as a Remainder Beneficiary and that was reasonably productive, the Decedent invested the property of the BJG Trust solely in high-yield securities that maximized the current income to the Decedent himself as life beneficiary of the trust, and that minimized the taxation of such income to the Decedent, by maintaining from 83% (Eighty-Three Percent) to 98% (Ninety-Eight Percent) of the assets of the trust in municipal bonds that were free of federal and

New Hampshire State taxes, and by investing all other assets of the trust in other high-yield, low/no growth securities including corporate bonds and electric utility stocks.

23. As a result of the Decedent's management and investment of the property of the BJG Trust for the exclusive benefit of the Decedent himself, as life beneficiary, during the time that the Decedent served as sole trustee of the BJG Trust, the value of the BJG Trust assets held in the brokerage account at Merrill Lynch in Manchester, New Hampshire, was reduced by approximately $150,000 (One Hundred Fifty Thousand Dollars), rather than having increased in value by a reasonably productive amount.

24. By contrast, during the time that the Decedent served as sole trustee of the BJG Trust, and even though the Decedent paid virtually all of his expenses from the CLG Trust assets held in the CLG Trust brokerage account at Merrill Lynch in Manchester, New Hampshire, the Decedent managed and invested the CLG Trust assets with a diversified mix of approximately 65% (Sixty-Five Percent) equities and 35% (Thirty-Five Percent) municipal bonds, and the CLG Trust assets held in the CLG Trust brokerage account at Merrill Lynch in Manchester, New Hampshire, increased by approximately 54% (Fifty-Four Percent).

25. As a result of the differences in the Decedent's management and investment of the assets of the CLG Trust and the assets of the BJG Trust during the time that the Decedent served as sole trustee of the BJG Trust, at the time of the Decedent's death, the total value of the assets held in the CLG Trust account at Merrill Lynch in Manchester, New Hampshire, was greater than the total value of the assets in the BJG Trust Merrill Lynch account.

26. If, during the time that the Decedent served as sole trustee of the BJG Trust, the Decedent had managed and invested the assets of the BJG Trust in the same manner that the Decedent had managed and invested his own assets in the CLG Trust, the assets of the BJG

Trust would have increased in value by 54% (Fifty-Four Percent), rather than having been reduced in value by $150,000 (One Hundred Fifty Thousand Dollars).

27. During the time that the Decedent served as sole trustee of the BJG Trust, the Standard & Poor 500 equity index increased 50% (Fifty Percent).

28. If, during the time that the Decedent served as sole trustee of the BJG Trust, the Decedent had managed and invested the assets of the BJG Trust assets in the Standard & Poor 500 equity index, the assets of the BJG Trust would have increased in value by 50% (Fifty Percent), rather than having been reduced in value by $150,000 (One Hundred Fifty Thousand Dollars).

29. During the time that the Decedent served as sole trustee of the BJG Trust, the Decedent had fiduciary duties to disclose information to Plaintiff, as a Remainder Beneficiary, and to consult with Plaintiff, as a Remainder Beneficiary, as to the management and investment of the BJG Trust.

30. During the time that the Decedent served as sole trustee of the BJG Trust, the Decedent did not disclose any information to, or consult with, Plaintiff or any of the other Remainder Beneficiaries as to the management and investment of the BJG Trust assets, other than to inform Plaintiff by letter from the Decedent's attorney dated November 21, 2013, of an approximate value of the BJG Trust assets. In fact, as of the end of November 2013, the value of the BJG Trust assets held in the brokerage account at Merrill Lynch in Manchester, New Hampshire, was $200,000 (Two Hundred Thousand Dollars) less than stated in the letter from Decedent's attorney dated November 21, 2013.

31. During the time that the Decedent served as sole trustee of the BJG Trust, the Decedent periodically transferred cash from the BJG Trust account at Merrill Lynch to the

6

CLG Trust account at Merrill Lynch. The Decedent made such cash transfers from the BJG Trust account to the CLG Trust account without regard to whether the cash in the BJG Trust was attributable to income, or was attributable to principal, as a result of sales or redemptions of securities.

32. During the time that the Decedent served as sole trustee of the BJG Trust, none of the cash transfers that the Decedent made from the BJG Trust account at Merrill Lynch to the CLG Trust account at Merrill Lynch was made on the first day of any month.

33. During the time that the Decedent served as sole trustee of the BJG Trust, none of the cash transfers that the Decedent made from the BJG Trust account at Merrill Lynch to the CLG Trust account at Merrill Lynch was consented to by any independent trustee or by any of BJG's sons.

34. During the time that the Decedent served as sole trustee of the BJG Trust, Decedent transferred approximately $46,000 (Forty-Six Thousand Dollars) more in cash from the BJG Trust account at Merrill Lynch to the CLG Trust account at Merrill Lynch than the income of the BJG Trust, which amount was principal of the CLG Trust that the Decedent transferred to himself in violation of the BJG Trust's restrictions on the use of principal by the Decedent.

35. Upon information and belief, the Decedent used the principal that he improperly removed from the BJG Trust to purchase certain real property in the center of the town of Grafton, New Hampshire, which the Decedent thereafter donated to the municipality for the Decedent's own charitable interest and benefit, to the detriment of the BJG Trust and Plaintiff, as a Remainder Beneficiary.

36. Following the death of the Decedent, Defendant became the executor of the CLG Estate and the successor trustee of the CLG Trust.

37. Following the death of the Decedent, Plaintiff became a successor trustee of the BJG Trust.

38. In July 2017, Plaintiff requested and obtained access from Defendant to certain records of the BJG Trust that the Decedent had maintained at his residence in Grafton, New Hampshire, including copies of the Merrill Lynch statements for the BJG Trust account.

39. After Plaintiff reviewed such records, Plaintiff learned that the account had been reduced in value, that Decedent had failed to diversify the assets of the BJG Trust, that the Decedent had managed the property of the BJG Trust for the exclusive benefit of the Decedent himself, as life beneficiary, and in disregard, and to the detriment, of the interests of Plaintiff as a Remainder Beneficiary, and that the Decedent had removed principal from the BJG Trust in violation of the terms and restrictions of the BJG Trust.

40. Pursuant to Sections 564-B:10-1001 and 564-B:10-1002 of the New Hampshire Revised Statutes, Plaintiff is entitled to remedies, including damages, as a result of Decedent's violations of duties to owed by the Decedent to Plaintiff, as a Remainder Beneficiary, during the time that the Decedent served as sole trustee of the BJG Trust.

41. Pursuant to Sections 564-B:8-811 and 564-B:8-812(b) of the New Hampshire Revised Statutes, Plaintiff is entitled to take reasonable steps to redress Decedent's breaches of trust during the time that the Decedent served as sole trustee of the BJG Trust.

42. The assets of the CLG Estate that have been declared by the Defendant as executor are insufficient to compensate Plaintiff for the damages caused by the Decedent's breaches of fiduciary duty, and by the Decedent's violations of the BJG Trust's terms, during the time that the Decedent served as sole trustee of the BJG Trust.

43. Pursuant to Section 564-B:5-505(b)(1) of the New Hampshire Revised Statutes, the property of the CLG Trust is subject to the claims of Plaintiff against the Decedent for Decedent's breaches of fiduciary duty, and for the Decedent's violations of the BJG Trust's terms, during the time that the Decedent served as sole trustee of the BJG Trust.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Fiduciary Duties)**

44. Plaintiff repeats and realleges each allegation contained in Paragraphs 1 through 43 above with the same force and effect as if set forth here in full.

45. During the time that the Decedent served as sole trustee of the BJG Trust, the Decedent breached his fiduciary duties of loyalty, impartiality, fairness and prudence (including the duty of prudent administration), in violation of Sections 564-B:8-801, 564-B:8-802, 564-B:8-803, and 564-B:8-804 of the New Hampshire Revised Statutes and federal common law.

46. As a result of the breaches of fiduciary duty by the Decedent during the time that the Decedent served as sole trustee of the BJG Trust, the BJG Trust, and Plaintiff as a Remainder Beneficiary, was damaged in an amount to be determined at trial but not less than $1,025,000 (One Million Twenty-Five Thousand Dollars).

47. The CLG Estate, and Defendant, as executor of the CLG Estate, is responsible and liable for the breaches of fiduciary duties by Decedent committed during the time that the Decedent served as sole trustee of the BJG Trust, and for the damages caused thereby to the BJG Trust and to Plaintiff as a Remainder Beneficiary of the BJG Trust.

48. Pursuant to Section 564-B:5-505(b)(1) of the New Hampshire Revised Statutes, the CLG Trust, and Defendant as trustee of the CLG Trust, is responsible and liable for the breaches of fiduciary duties by Decedent committed during the time that the Decedent served

as sole trustee of the BJG Trust, and for the damages caused thereby to the BJG Trust and to Plaintiff as a Remainder Beneficiary of the BJG Trust.

49. Pursuant to Sections 564-B:10-1001 and 564-B:10-1002 of the New Hampshire Revised Statutes, Plaintiff is entitled to remedies, including the payment of money, the restoration of property, and the payment of damages, as a result of Decedent's violations of duties owed by the Decedent to Plaintiff, as a Remainder Beneficiary, during the time that the Decedent served as sole trustee of the BJG Trust.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of Trust Terms Regarding Use of Principal)

50. Plaintiff repeats and realleges each allegation contained in Paragraphs 1 through 43 above with the same force and effect as if set forth here in full.

51. During the time that the Decedent served as sole trustee of the BJG Trust, the Decedent breached the terms of the BJG Trust, in violation of the BJG Trust, Sections 564-B:8-801 of the New Hampshire Revised Statutes, and federal common law, by withdrawing and paying principal to the Decedent himself.

52. As a result of the breaches of the terms of the BJG Trust by Decedent with respect to the use of principal during the time that the Decedent served as sole trustee of the BJG Trust, the BJG Trust, and Plaintiff as a Remainder Beneficiary of the BJG Trust, were damaged in an amount to be determined at trial but not less than $46,000 (Forty-Six Thousand Dollars).

53. The CLG Estate, and Defendant, as executor of the CLG Estate, is responsible and liable for the breaches of the terms of the BJG Trust by Decedent with respect to the use of principal committed during the time that the Decedent served as sole trustee of the BJG Trust, and for the damages caused thereby to the BJG Trust and to Plaintiff as a Remainder Beneficiary of the BJG Trust.

54.     Pursuant to Section 564-B:5-505(b)(1) of the New Hampshire Revised Statutes, the CLG Trust, and Defendant as trustee of the CLG Trust, is responsible and liable for the breaches of the terms of the BJG Trust by Decedent with respect to the use of principal committed during the time that the Decedent served as sole trustee of the BJG Trust, and for the damages caused thereby to the BJG Trust and Plaintiff as a Remainder Beneficiary of the BJG Trust.

55.     Pursuant to Sections 564-B:10-1001 and 564-B:10-1002 of the New Hampshire Revised Statutes, Plaintiff is entitled to remedies, including the payment of money, the restoration of property, and the payment of damages, as a result of Decedent's violations of duties to owed by the Decedent to Plaintiff, as a Remainder Beneficiary, during the time that the Decedent served as sole trustee of the BJG Trust.

56.     As an alternative remedy to damages for the Decedent's breaches of the terms of the BJG Trust with respect to the use of principal committed during the time that the Decedent served as sole trustee of the BJG Trust, Plainitff is entitled to have a constructive trust imposed on property purchased with principal that the Decedent improperly removed from the BJG Trust, including without limitation on the real property in the center of the town of Grafton, New Hampshire, purchased by Decedent in whole or in part with such principal.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Evan W. Gray demands judgment against Defendant Chester L. Gray III, as executor of the Estate of Chester L. Gray, Jr. and trustee of the Chester L. Gray, Jr., Trust of 1996:

(i) awarding monetary damages on Plaintiff's First Cause of Action in an amount to be determined at trial but not less than $1,025,000 (One Million Twenty-Five Thousand Dollars);

(ii) awarding monetary damages on Plaintiff's Second Cause of Action in an amount to be determined at trial but not less than $46,000 (Forty-Six Thousand Dollars);

(iii) alternatively, imposing a constructive trust on all property purchased by the Decedent with principal removed from the Barbara J. Gray Trust of 1996;

(iv) for applicable monetary interest on Plaintiff's claims;

(v) for Plaintiff's attorney's fees and expenses; and

(vi) for such other equitable remedies or legal relief as this Court deems just and proper.

Dated: June 13, 2018

_____  PRO SE
Plaintiff Evan W. Gray, *pro se*

369 Lexington Avenue, Suite 211
New York, New York 10017
(646) 556-6638