UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Evan W. Gray

    v.                              Civil No. 18-cv-522-JD
                                      Opinion No. 2019 DNH 013

Chester L. Gray, III

O R D E R

Evan Gray ("Evan") brought suit against Chester L. Gray, III ("Skip"), as executor of the estate of Chester L. Gray, Jr., as sole trustee of a trust (the "CLG Trust") created by Chester, and as co-trustee of a trust (the "BJG Trust") created Barbara Gray.[1] Evan alleges that Chester, prior to his death, breached his fiduciary duties while he was trustee of the BJG Trust. Evan also alleges that Skip has breached his fiduciary duties as trustee of the CLG Trust.

Skip filed a third-party complaint against the co-trustees of the BJG Trust, who are himself, Scott Gray (a third brother), and Evan, seeking indemnification for any liability, attorneys' fees, and costs arising from Evan's suit. Skip also seeks a declaratory judgment to enforce certain terms of the BJG Trust. Evan then filed an amended complaint. In his Amended Answer to

---

[1] As is explained below, the suit is the result of a dispute between brothers about their parents' trusts.

the Amended Complaint and his Answer to the Third-Party Complaint, Skip alleges a counterclaim and a crossclaim, each with three parts, against Evan, seeking indemnification.

Evan moves to strike and dismiss Skip's Third-Party Complaint and moves to dismiss Skip's counterclaim and crossclaim. Skip objects.

## Background

This suit involves three brothers, Skip, Scott, and Evan Gray. In 1996, the brothers' parents, Barbara and Chester Gray, created, respectively, the "BJG Trust" and the "CLG Trust." In 2011, they restated the terms of their respective trusts by executing the trust documents at issue.

Barbara and Chester Gray served as the initial co-trustees of both the CLG Trust and the BJG Trust, which were revocable until their respective settlor's death. The CLG Trust includes among its assets valuable real estate located in Grafton and Springfield, New Hampshire.

1. The Trust Terms

It is the general purpose of the CLG Trust to maintain and hold the Grafton and Springfield real estate for Barbara and Chester Gray's descendants "as long as is reasonably and prudently possible." Doc. 15-1 at 5. To that end, the CLG

Trust provides for the creation of a "Maintenance Fund" consisting of the real estate and $820,000, adjusted for inflation, after Chester's death.[2]  After all the provisions of the CLG Trust have been satisfied, the remainder of the CLG Trust's assets are to be distributed equally among Skip, Scott, and Evan.

The BJG Trust has no expressly stated purpose other than to provide for the disposition of Barbara Gray's assets after her death.  In addition, Article 2.4.A of the BJG Trust provides the following:

> If at the time of the death of my husband and myself, the amount of liquid assets held in the continuing trust for real estate located in Grafton and Springfield, New Hampshire as set forth in my husband's trust is less than [$820,000 plus calculated inflation], I direct that my trustee distribute from my trust an amount of property that will increase the sums held in said continuing trust of my husband's to [$820,000 plus calculated inflation].

Doc. 15-2 at 5.  The BJG Trust documents require that the remaining trust property be distributed equally among Skip, Scott, and Evan.  In short, the BJG Trust must make up any deficit in the CLG Trust's Maintenance Fund that exists "at the

---

[2] The CLG Trust names Skip as the primary beneficiary of the Maintenance Fund.  Doc. 15-1 at 4.

3

time of the death of"[3] Chester and Barbara, and then distribute the remaining money or assets equally among Skip, Scott, and Evan.

Both trusts contained various contingencies for succession of trustees depending on the order in which Barbara and Chester died and whether any of their children predeceased them. As it happened, Barbara Gray died in 2013. Upon his wife's death, Chester Gray became sole trustee of both trusts. Although the BJG Trust became irrevocable, Chester retained a lifetime interest in it.

Specifically, as to the BJG Trust, Chester was permitted to receive any income from the trust paid "in convenient installments." Doc. 15-2 at 4. He was also permitted to receive "from the principal of the trust from time to time such amounts as are in [the] trustee's discretion necessary for his support and maintenance in his accustomed manner of living and for his health care," after taking into account any other "resources available to him," including the income from the trust. Id. The "power to use principal for [Chester's] benefit

---

[3] The parties appear to dispute the meaning of this phrase. The court's description of this language in this order does not create any findings as to the phrase's construction or interpretation.

shall not be exercised without the consent of an independent trustee or one of [Barbara's] children." Id.

Chester remained as trustee of both the BJG Trust and CLG Trust until his death in 2017. Upon their father's death, Skip, Scott, and Evan became co-trustees of the BJG Trust; Skip became sole trustee of the CLG Trust, which became irrevocable upon the death of Chester. Skip was also named executor of Chester's estate (the "CLG Estate").

### 2. Evan's Complaint

In June 2018, Evan filed this lawsuit, and he filed an amended complaint on September 26, 2018. In Count 1, Evan states that the claim is brought "by Plaintiff as trustee and beneficiary of the BJG Trust." Doc. 9 at 14. Evan alleges that, during Chester's four-year tenure as sole trustee of the BJG Trust, he improperly invested in high-yield, low-growth assets. In Count 2, Evan, also "as trustee and beneficiary of the BJG Trust," alleges that Chester violated the BJG Trust's terms by removing principal from the BJG Trust and giving it to the CLG Trust without receiving the consent of an independent trustee or one of the beneficiaries, as the trust requires. Id. at 15. Evan alleges that Chester then used these assets to purchase real estate in Grafton, New Hampshire, which he later

5

donated to the town.  In Counts 1 and 2, Evan appears to name Skip as a defendant in two capacities: as executor of the CLG Estate and as trustee of the CLG Trust.

In Count 3, Evan, as "qualified beneficiary and distributee of the CLG Trust," alleges that Skip breached his fiduciary duties as trustee of the CLG Trust, by failing to deliver reports on the condition of the trust and by failing to properly invest and manage the trust property.  Id. at 16.  In Count 4, Evan, as "trustee and beneficiary of the BJG Trust," asks that Skip be removed as co-trustee of the BJG Trust due to breaches of his duty of loyalty to the BJG Trust, fundamental conflicts of interest with his duties as sole trustee of the CLG Trust, and his failure to cooperate with Evan and Scott, his co-trustees of the BJG Trust.  Id. at 18.

3. Skip's Third-Party Complaint, Counterclaim, and Crossclaim

On September 18, 2018, before Evan filed the Amended Complaint that added Counts 3 and 4 along with language clarifying that the lawsuit was brought by Evan in his capacity as a trustee of the BJG Trust, Skip filed a third-party complaint naming himself, Scott, and Evan in their capacities as trustees of the BJG Trust as third-party defendants.  In Count 1, Skip requests indemnification for the CLG Estate and the CLG

Trust from the BJG Trust, alleging that Article 4.3 of the BJG Trust, which exonerates a trustee from liability where he acts in good faith, allows for "indemnification from the BJG Trust for any damages that may be awarded to [Evan], as well as any defense costs that have been and will be incurred, in connection with this litigation." Doc. 7 at 6. In Count 2, Skip requests a declaratory judgment to enforce Article 2.4.A of the BJG Trust, which, Skip contends, requires a pour over of funds to the extent the CLG Trust's assets are insufficient to fund the Maintenance Fund to be created by the CLG Trust.

On October 31, 2018, Skip filed an amended answer to the Amended Complaint, alleging a counterclaim with three parts against Evan. In the counterclaim, Skip appears to request indemnification from Evan personally and from the BJG Trust corpus for "any and all expenses, fees, damages, or other items" resulting from the litigation. Doc. 20 at 21.

The same day, Skip, in his capacity as a trustee of the BJG Trust, answered the Third-Party Complaint that he had filed against himself.[4] In the Answer, Skip generally denied the BJG

---

[4] Skip filed the Third-Party Complaint in his capacity as executor of the CLG Estate and his capacity as trustee of the CLG Trust and seeks indemnification from the BJG Trust. Skip is also a defendant in the Third-Party Complaint in his capacity as a trustee of the BJG Trust.

7

Trust's responsibility for indemnification of the CLG Estate and CLG Trust.  Skip states that Evan's Amended Complaint indicates that he brought claims as a trustee of the BJG Trust.  Skip asserts that Evan was not authorized to bring claims on behalf of the BJG Trust.  For that reason, Skip alleges, any indemnification to the CLG Estate or the CLG Trust should come from Evan personally or from his share of the BJG Trust.  In addition, Skip brings a crossclaim against Evan "in his individual capacity and as co-trustee" for losses resulting from his suit.

## Discussion

Evan moves to strike/dismiss the Third-Party Complaint and to dismiss the counterclaim and crossclaim.  Skip objects.

### A. Standard of Review

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded facts as true and makes all reasonable inferences in the pleading party's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11-13 (1st Cir. 2011).  The court, however, disregards conclusory allegations.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).

Under Federal Rule of Civil Procedure 14(a)(4), "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." Fed. R. Civ. P. 14(a)(4). The court should strike a third-party complaint only "if it is obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim." Fed. R. Civ. P. 14(a), Advisory Committee Notes (1963 Amendments). The court "should allow [third-party practice] on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir. 1999).

B. <u>Motion to Strike/Dismiss the Third-Party Complaint</u>

Evan argues that the court must strike/dismiss the Third-Party Complaint because it is procedurally improper. He contends that Skip cannot bring a third-party complaint against him because, as the plaintiff, he is a party in the case. Evan also asserts that Skip cannot sue himself. Evan further contends that the Third-Party Complaint fails to state a claim upon which relief can be granted and fails to state appropriate derivative liability claims.

1. Procedural Issues

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14. A person who possesses two or more distinct legal capacities is a distinct "party" in each capacity. Cohen v. Baker, 845 F. Supp. 289, 291 (E.D. Pa. 1994) ("A party to a lawsuit in one distinct capacity is not considered to be a party with regard to other distinct legal capacities. . . . Although [the third-party defendants] were already parties in their capacities as plan beneficiaries, they were not parties in their capacities as ERISA plan fiduciaries."); see also Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013) (observing that persons sued in their official capacity are merely proxies for the entities they represent and holding that "a person sued in his official capacity is a different party, in contemplation of law, than the same person sued in his individual capacity"). A trustee has two distinct legal capacities: his personal capacity and his fiduciary capacity, which may also be called his capacity as a trustee. RSA § 564-B:10-1010(c) (stating that certain claims "may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity, whether or not the trustee is personally liable for the claim"); State of N.H.

10

Wetlands Bd. v. Marshall, 127 N.H. 240, 250 (1985) (sustaining judgment against assets of trust where pleading named the trustee "individually and in her capacity as the sole trustee . . .").

Skip correctly contends that when he filed the Third-Party Complaint, Evan was not a party in his capacity as a trustee of the BJG Trust. For that reason, a claim against Evan as a trustee would be a third-party claim under Rule 14. Skip acknowledges that the Amended Complaint changed the parties by adding Evan in his capacity as a trustee of the BJG Trust. He asks the court to construe the Third-Party Complaint as a counterclaim if necessary to conform to the Federal Rules of Civil Procedure or to allow him to file amended pleadings.

To avoid any further confusion about the parties and claims in this case and because the Amended Complaint was filed <u>after</u> the Third-Party Complaint, it is appropriate to allow Skip to file amended pleadings to address the changed circumstances.[5]

---

[5] Skip denies that Evan was authorized to bring this suit as a trustee of the BJG Trust in his pleadings, but he has not moved to dismiss Evan from the suit in that capacity. See Fed. R. Civ. P. 9(a) (noting that a party need not plead the capacity in which he sues and that denial of capacity must be made through negative pleading); see, e.g., Doermer v. Oxford Fin. Group, Ltd., 884 F.3d 643, 648-49 (7th Cir. 2018) (holding that an individual lacks capacity to sue in his capacity as a trustee where he does not have the requisite authorization of his co-trustees). Therefore, Evan is a party to the suit in both his personal and trustee capacities.

11

## 2. Substantive Issues

Evan also moves to dismiss the Third-Party Complaint on the ground that it fails to state an actionable claim. Because the Third-Party Complaint is struck, it is not necessary to address the substantive issues that Evan raises.

## C. Motion to Dismiss Counterclaim and Crossclaim

Evan moves to dismiss Skip's counterclaim and crossclaim, included in the Amended Answer to the Amended Complaint and Answer to the Third-Party Complaint. In support, Evan contends that the claims lack sufficient facts to show a plausible claim for relief and the cited laws do not support the claims. Evan also contends that the claims are unripe. Skip objects to the motions, arguing that he alleged sufficient grounds to avoid dismissal.

Because the Third-Party Complaint will be struck, the Answer to it is moot and the crossclaim will be dismissed, without prejudice, as moot.

With respect to the counterclaim, the court agrees with Evan that it appears to be incomplete. The counterclaim is alleged as follows:

> 1. Under RSA 564-B:7-709, a trustee is entitled to reimbursement out of the trust property, with

12

> interest, for expenses properly incurred in the administration of the trust. Further, under RSA 564-B: 10-1004 and/or 564-B:10-1002, the court may award costs and expenses, including reasonable attorney's fees, to any party to be paid by another party or from the trust that is the subject of the controversy.
>
> 2. Notice is hereby given that Defendant shall ask the Court to order that Plaintiff Evan Gray reimburse him for his costs, expenses, and attorney's fees, that the same be reimbursed to him out of the corpus and charged to Plaintiff or, in the alternative, or that the same be reimbursed to him out of the corpus and charged to Plaintiff.
>
> 3. Notice is hereby given that Defendant shall ask the court to order that Plaintiff Evan Gray indemnify and reimburse him and/or the BJG Trust for any and all expenses, fees, damages, or other items ("Losses") from him in both his fiduciary and individual capacities, that he or the BJG Trust suffer relating to or as a result of this action. See RSA 564-B:10-1004.

Doc. 20 at 21. As written, the counterclaim simply provides notice of a claim or claims that Skip may pursue in the future. He does not ask for relief to be granted. The counterclaim is dismissed without prejudice to allow Skip to file a claim in proper form.

## Conclusion

For the foregoing reasons, Evan's motions to strike and dismiss (documents nos. 22, 23, and 24) are granted as follows:

(1) Skip's Third-Party Complaint (doc. 7) is struck,

(2) Skip's Answer to the Third-Party Complaint and crossclaim (doc. 21) are struck.

(3) Skip's counterclaim in his Amended Answer (doc. 20) is dismissed without prejudice.

Skip is granted leave to file an appropriate third-party complaint and/or counterclaims or crossclaims on or before **January 31, 2019.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 15, 2019

cc:  Adam M. Hamel, Esq.
     Ralph F. Holmes, Esq.
     Roy S. McCandless, Esq.
     Neil B. Nicholson, Esq.
     Andrea Jo Schweitzer, Esq.