UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Evan W. Gray

   v.                                Civil No. 18-cv-522-JD
                                     Opinion No. 2019 DNH 086
Chester L. Gray, III


O R D E R

In 1996, Barbara Gray and Chester L. Gray, Jr.,[1] created, respectively, the "BJG Trust" and the "CLG Trust." In 2011, they restated the terms of their respective trusts by executing the trust documents at issue in this case.

Barbara and Chester served as the initial co-trustees of both the CLG Trust and the BJG Trust, which were revocable until their respective settlor's death, at which point they became irrevocable under their provisions. Among the assets included in the CLG Trust is real estate located in Grafton and Springfield, New Hampshire.

One of the principal purposes of the CLG Trust is to hold and maintain the Grafton and Springfield real estate for Barbara and Chester's descendants "as long as is reasonably and prudently possible." Doc. 15-1 at 5. To that end, the CLG Trust provides that, after Chester's death, the real estate will

---

[1] For ease of reference, the court will refer to the principals in this case by their first names.

be held in a Continuing Trust, which shall exist until certain conditions outlined in Article 2.2.A(2)-(4) of the CLG Trust are met.

In addition, after Chester's death, the CLG Trust provides for the creation of a "maintenance fund" for the real estate, which is to be funded with assets valued at $820,000 adjusted for inflation. After all of the CLG Trust provisions have been satisfied, the remainder of the CLG Trust's assets are to be distributed equally among Barbara and Chester Gray's three sons, Skip Gray, Scott Gray, and Evan Gray.

The BJG Trust provides for the management of Barbara's assets before and after her death. Barbara died in 2013. Following her death, Chester became sole trustee of both trusts.

Under the BJG Trust, after Barbara's death the income from the trust was payable to Chester "in convenient installments, at least quarterly during his lifetime." Art. 2.3.A(1), doc. 15-2 at 4. Chester was also allowed to receive "from the principal of the trust from time to time such amounts as are in [the] trustee's discretion necessary for his support and maintenance in his accustomed manner of living and for his health care, after taking into account the income payable to him hereunder and all other resources available to him." Art. 2.3.A(2), doc. 15-2 at 4. The "power to use principal for [Chester's] benefit

shall not be exercised without the consent of an independent trustee or one of [Barbara's] children." Id.

Chester remained as trustee of both the BJG Trust and the CLG Trust until his death in 2017. The BJG Trust includes provisions that became effective after the death of both Barbara and Chester. One of the principal provisions of the BJG Trust is Article 2.4.A which provides:

> If at the time of the death of my husband and myself, the amount of liquid assets held in the continuing trust for real estate located in Grafton and Springfield, New Hampshire as set forth in my husband's trust is less than [$820,000 adjusted for inflation], I direct that my trustee distribute from my trust an amount of property that will increase the sums held in said continuing trust of my husband's to [$820,000 adjusted for inflation].

Doc. 15-2 at 5. Any remaining money and assets are to be distributed equally among Skip, Scott, and Evan.

After Chester's death, Skip, Scott, and Evan became co-trustees of the BJG Trust, and Skip became sole trustee of the CLG Trust. Skip was also named executor of Chester's estate (the "CLG Estate").

This case involves disputes among Skip, Scott, and Evan. Evan brought suit against Skip as executor of the CLG Estate; as sole trustee of the CLG Trust; and as co-trustee of the BJG Trust. Evan alleges that his father, Chester, prior to his death, breached his fiduciary duties while he was the trustee of

3

the BJG Trust. Evan also alleges that Skip has breached his fiduciary duties as trustee of the CLG Trust, and he seeks removal of Skip as co-trustee of the BJG Trust based on alleged conflicts of interest.

In his capacities as executor of the CLG Estate and trustee of the CLG Trust, Skip filed counterclaims for indemnification and for a declaratory judgment concerning the application of the BJG Trust's "pour over" provision, Article 2.4.A (the "CLG Estate Counterclaims").[2] Doc. 36. Evan moves to dismiss the CLG Estate Counterclaims.[3] Skip objects.

## Counterclaims

A. <u>Indemnification (CLG Estate Counterclaims - Count I)</u>

In Count I of the CLG Estate Counterclaims, Skip alleges that the CLG Estate is entitled to "indemnification" for expenses associated with this lawsuit. Skip contends that

---

[2] Skip also filed counterclaims in his capacity as a trustee of the BJG Trust (the "BJG Trust Counterclaims"). In the BJG Trust Counterclaims, Skip seeks reimbursement of expenses, attorneys' fees, and costs under RSA 564-B:10-1004, RSA 564-B:7-709, and Harkeem v. Adams, 117 N.H. 687 (1977). Skip seeks to recover from Evan personally and from the BJG Trust assets.

[3] This order addresses only doc. no. 41, which is Evan's motion to dismiss the CLG Estate Counterclaims. The court will issue a separate order addressing doc. no. 42, in which Evan moves to dismiss the BJG Trust Counterclaims.

4

Article 4.3 of the BJG Trust[4] permits indemnification for actions taken by a trustee in good faith.  See Doc. 36 ¶¶ 28-29.  Skip also cites New Hampshire Revised Statutes Annotated ("RSA") 564-B:10-1004, which provides for awarding attorneys' fees, costs, and expenses "as justice and equity" require to any party in a suit "involving the administration of a trust."  Additionally, he asserts that a trustee is entitled to reimbursement for expenses incurred in managing a trust under common law rules.

> B. <u>Declaratory Judgment (CLG Estate Counterclaims - Count II)</u>

In Count II of the CLG Estate Counterclaims, Skip asks the court for a declaratory judgment construing Article 2.4.A of the BJG Trust, which provides for a pour over of funds to the CLG Continuing Trust's maintenance fund.  Skip alleges that, under Article 2.4.A of the BJG Trust, the trustees of the BJG Trust must pour over property into the Continuing Trust if, as a result of this lawsuit, the liquid assets in the Continuing

---

[4] Article 4.3 states, in relevant part: "The trustee shall be entitled to use the trustee's best judgment in exercising the powers and rights conferred by this trust and in fulfilling the trustee's obligations under the trust and those imposed by law; <u>the trustee shall not be liable for any action taken or omitted in good faith pursuant to such provisions</u>."  Doc. 15-2 at 10 (emphasis added).

5

Trust are less than the requisite $820,000 adjusted for inflation.

## Discussion

Evan moves to dismiss both of the CLG Estate Counterclaims. He argues that the court lacks subject matter jurisdiction because the counterclaims are unripe; that Count I provides no legal basis for "indemnification"; that the counterclaims are procedurally improper under Federal Rule of Civil Procedure 13; that Count I must be brought by motion under Federal Rule of Civil Procedure 54(d)(2) not by counterclaim; and that Count II, Skip's declaratory judgment counterclaim, fails to state a claim as a matter of law. Skip objects, arguing that the counterclaims were properly brought and state claims for relief. Evan filed a reply, and Skip filed a surreply.

A. Standard of Review

In considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the pleading party's favor. See Martinez-Rivera v. Commonwealth of

Puerto Rico, 812 F.3d 69, 73-74 (1st Cir. 2016).[5] The court, however, disregards conclusory allegations. Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).

B.  Subject Matter Jurisdiction

Evan contends that the court lacks subject matter jurisdiction over both of the CLG Estate Counterclaims because they are unripe and contingent on the outcome of his own claims. Skip responds that the CLG Estate Counterclaims are ripe for adjudication because the relevant facts are fully developed. Skip further notes that the declaratory judgment counterclaim rests "simply upon the Court's legal interpretation of the trust document's terms." Doc. 46 at 18-19.

A claim is ripe if "[t]he facts alleged, under all the circumstances, . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of

---

[5] Evan presents a "sufficiency" or facial challenge to the court's subject matter jurisdiction. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) ("The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency . . . . In performing this task, the court must credit the plaintiff's well-pleaded factual allegations . . . , draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly.").

7

judicial relief sought." Reddy v. Foster, 845 F.3d 493, 501 (1st Cir. 2017). The "ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Id. at 500 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). "Its basic function is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26, 33 (1st Cir. 1999) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).

1. Indemnification

Skip, in his capacity as executor of the CLG Estate, seeks indemnification from the BJG Trust for all costs incurred in connection with this litigation. The relief Skip is seeking extends beyond what Evan might recover as damages in his claim against Skip. Instead, he seeks all the costs of the litigation, which are already accruing.

While the result of Evan's claims will be a factor in assessing the alleged costs of the litigation, that is not the only consideration. Therefore, the question of whether Skip is entitled to indemnification is ripe, and the amount of

indemnification, if any, would be decided at the conclusion of the case.

## 2. Declaratory Judgment

In his declaratory judgment claim, Count II, Skip asks the court to construe the pour over provision in the BJG Trust. Article 2.4.A, doc. 15-2 at 5. Skip contends that the provision requires the BJG Trust to add funds to the maintenance fund if the liquid assets of the CLG Trust's Continuing Trust are insufficient to fund the maintenance fund at the threshold level of $820,000 adjusted for inflation. Based on that interpretation, Skip alleges that Evan's suit will cause a pour over from the BJG Trust to the Continuing Trust if the CLG Trust pays Evan damages, which would deplete the assets available in the Continuing Trust to fund the maintenance fund.

Evan contends that whether a pour over was necessary was determined at the moment of Chester's death so that this suit cannot affect the provision. A substantial controversy exists about the interpretation of the terms of the BJG Trust and the CLG Trust. Evan has not shown that the declaratory judgment claim, Count II, is unripe.

C.  Legal Basis for "Indemnification" under New Hampshire Law

Evan argues that New Hampshire law does not support Count I, which purports to seek indemnification on the CLG Estate's behalf. Evan asserts that Article 4.3 of the BJG Trust cannot support Skip's counterclaim for indemnification because Article 4.3 is an exculpatory clause not an indemnification clause. Skip responds that his indemnification claim arises from common law rules that provide indemnification for trustees for expenses "properly incurred in the administration and management of the trust, and is justified by the exculpatory provision in Article 4.3 of the BJG Trust, which shielded Chester from liability for actions taken or omitted in good faith." Doc. 46 at 4-5.

Article 4.3 states that the trustee "shall not be liable" for actions taken in good faith. Article 4.3 does not require another party to pay an obligation for which the trustee is primarily liable. See Gray v. Leisure Life Indus., 165 N.H. 324, 327 (2013) (noting that a "right to indemnity arises 'where one is legally required to pay an obligation for which another is primarily liable.'") (quoting Coco v. Jaskunas, 159 N.H. 515, 519 (2009)); see also Weiss v. Weiss, 984 F. Supp. 675, 677-78 (S.D.N.Y. 1997) (discussing exculpatory provisions in trusts). In his response, Skip appears to agree that Article 4.3 is an

10

exculpatory provision, not an indemnification provision.[6] Accordingly, Article 4.3 does not provide Skip a cause of action for indemnification.[7]

Skip, however, does not merely rely on Article 4.3 of the BJG Trust to support Count I. He also refers to principles codified by RSA 564-B:7-709(a) and cites RSA 564-B:10-1004. "A trustee . . . is entitled to be reimbursed out of the trust property [for] . . . expenses that were properly incurred in the administration of the trust . . . ." RSA 564-B:7-709(a); Restatement (Third) of Trusts § 38 (2003) ("A trustee is entitled to indemnity out of the trust estate for expenses properly incurred in the administration of the trust."). RSA 564-B:7-709 permits reimbursement of "properly" incurred expenses by a trustee. Furthermore, RSA 564-B:10-1004 permits recovery of attorneys' fees "as justice and equity may require."

Evan contends that Skip has not pled sufficient facts to show that "justice and equity" require an award of fees or

---

[6] Skip alleged in his Answer to Evan's Amended Complaint that the exculpatory clause provides him with a defense to Evan's claims because Chester acted in good faith. Doc. 15 at 32.

[7] The parties set forth several additional arguments related to Article 4.3, its enforceability, and its "good faith" precondition which need not be addressed in the context of the pending motion Evan's arguments on this point include Sections II(D)(1)-(6) of his motion to dismiss.

11

costs. The court, however, has wide discretion "to determine what is fair on a case by case basis." See Shelton v. Tamposi, 164 N.H. 490, 502 (2013). Skip alleges enough to state the claim.

Evan also argues that Skip is not entitled to indemnification for expenses incurred after Chester's death. Evan, however, does not dispute that Skip is the executor of the CLG Estate or that, as executor, he can file claims on behalf of the estate. Evan has not shown that Skip fails to state a claim on behalf of the CLG Estate against the trustees of the BJG Trust to the extent Chester properly incurred expenses while trustee of the BJG Trust. He also has not shown that Skip fails to state a claim on behalf of the CLG Estate for attorneys' fees and costs incurred in defense of Chester's actions as trustee of the BJG Trust.[8] In his role as trustee of the CLG Trust, Skip can also claim attorneys' fees and costs under RSA 564-B:10-1004.

Skip has alleged a sufficient legal basis for Count I of the counterclaim.

---

[8] To the extent Evan argues that any expenses relevant to this suit were not "properly" incurred, he fails to fully develop that argument for the court to sufficiently address it at this stage. See Doherty v. Merck & Co., Inc., 892 F.3d 493, 500 (1st Cir. 2018). In any event, the argument is premature until there is evidence about the expenses incurred.

12

D. "Maturity" of Counterclaims

Evan recasts his ripeness argument to challenge the "maturity" of the counterclaims under Rule 13. Evan relies on Stahl v. Ohio River Co., 424 F.2d 52, 55 (3d Cir. 1970), which held that a party seeking contribution must wait until liability has been determined or use the third-party pleading procedure in Rule 14, if otherwise permissible. Skip responds that the indemnification counterclaim "arises directly out of the same occurrences that are the subject matter of Evan's claims . . . and is based entirely upon pre-action events with only the right to relief depending upon the outcome of the main action." Doc. 46 at 8. He argues that the Federal Rules of Civil Procedure encourage resolving a "main action" and an indemnification claim arising from the same transactions or occurrences together.

Stahl is neither governing law nor pertinent to this claim, which does not seek contribution. "Immaturity" is not a basis on which to dismiss Skip's counterclaims.

E. Motion for Attorneys' Fees under Rule 54(d)(2)

Next, Evan argues that, under Rule 54(d)(2), Skip cannot assert a claim for attorneys' fees through a counterclaim.

13

Rather, Evan asserts, the claim must be made through a motion at the end of the case.

Rule 54(d)(2) states that a claim for attorneys' fees and related expenses must be made by motion. The rule provides "a procedure for presenting claims for attorneys' fees, whether or not denominated as 'costs'." Advisory Committee Note to 1993 Amendment of Fed. R. Civ. P. 54(d)(2). Importantly, Rule 54(b)(2) does not apply to fees and costs that are recoverable as an element of damages, which must be claimed in a pleading. Fed. R. Civ. P. 54(d)(2)(A).

Evan has not addressed the issue of whether a claim for expenses under RSA 564-B:7-709 must be proved as an element of damages at trial. More importantly, a claim for attorneys' fees and expenses puts the parties on notice that Skip is claiming them and does not preclude Skip from later filing a motion under Rule 54(d)(2), if appropriate. Evan has not shown that the counterclaim must be dismissed in favor of a later motion under Rule 54(d)(2).

    F.    <u>Failure to State Claim for Relief (Declaratory Judgment on Article 2.4.A of the BJG Trust)</u>

        1.    <u>Statutory Basis</u>

Evan argues that, in Count II, Skip incorrectly relies on the New Hampshire declaratory judgment statute, RSA 491:22,

14

rather than the federal statute, 28 U.S.C. § 2201(a). RSA 491:22 is an appropriate vehicle for Skip to advance his declaratory judgment claim. See, e.g., Deutsche Bank Nat. Trust Co. v. Stewart Title Guar. Co., 2013 WL 425126 (D.N.H. Jan. 31, 2013); DAE Aviation Enters. v. Old Republic Ins. Co., 2012 WL 3779154 (D.N.H Aug. 31, 2012).

### 2. Interpretation of Article 2.4.A

Evan also moves to dismiss the declaratory judgment counterclaim on its merits. Based on his interpretation of Article 2.4.A, Evan claims that Skip fails to state a claim for relief. Skip, however, asserts a conflicting interpretation of Article 2.4.A. Therefore, in Count II, Skip states a claim upon which relief can be granted.

### Conclusion

For the foregoing reasons, Evan's motion to dismiss (doc. no. 41) is denied.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

May 14, 2019
cc: Evan W. Gray, pro se
    Adam M. Hamel, Esq.
    Ralph F. Holmes, Esq.

Bradley M. Lown, Esq.
Royi S. McCandless, Esq.
Neil B. Nicholson, Esq.
Andrea J Schweitzer, Esq.