UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Evan W. Gray

        v.                          Civil No. 18-cv-522-JD
                                    Opinion No. 2019 DNH 207
Chester L. Gray, III


                        O R D E R

    As discussed in the court's prior orders, this case

involves disputes among Chester and Barbara Gray's three

children, Skip, Scott, and Evan Gray.[1]  Evan brought suit against

Skip as executor of the CLG Estate, as sole trustee of the CLG

Trust, and as co-trustee of the BJG Trust.  In his Amended

Complaint, Evan alleges that Chester, prior to his death,

breached his fiduciary duties while he was trustee of the BJG

Trust (Counts 1 and 2).  Evan brings Counts 1 and 2 in his

capacity as a trustee of the BJG Trust and in his individual

capacity.  Evan sues Skip in Skip's capacity as executor of the

CLG Estate.[2]

_____

    [1] As in its previous orders, the court will refer to the
principals in this case by their first names for clarity and
succinctness.  The court also uses the abbreviations for
Barbara's trust ("BJG Trust"), Chester's trust ("CLG Trust"),
and Chester's estate ("CLG Estate") consistent with its previous
orders.  E.g., docs. 54, 55.

    [2] Evan also alleges that Skip breached his fiduciary duties
as trustee of the CLG Trust (Count 3), and he seeks removal of
Skip as co-trustee of the BJG Trust based on alleged conflicts
of interest (Count 4).  Counts 3 and 4 of the Amended Complaint

Skip filed counterclaims,[3] the "CLG Estate Counterclaims," which were brought in his capacities as executor of the CLG Estate and trustee of the CLG Trust.  Doc. 36.  The CLG Estate Counterclaims are for indemnification (Count I) and for a declaratory judgment regarding the BJG Trust's "pour over" provision, Article 2.4.A (Count II).

Skip moves for summary judgment in his favor on Counts 1 and 2 of Evan's Amended Complaint to the extent Evan brought Counts 1 and 2 in his individual capacity.  Additionally, Skip moves for summary judgment in his favor as to Count II of the CLG Estate Counterclaims, arguing that he is entitled to relief on the merits of that claim and that Evan cannot prevail on his affirmative defense of equitable estoppel, which he pled as the Fifth Defense to Count II.

Evan opposes partial summary judgment.  Scott, who in his capacity as a co-trustee of the BJG Trust is a counterclaim defendant as to the CLG Estate Counterclaims, did not file an opposition to Skip's motion for summary judgment.[4]

---

are not at issue with regard to Skip's motion for partial summary judgment.

[3] Skip also filed counterclaims seeking attorneys' fees, costs, and other expenses in his capacity as trustee of the BJG Trust (the "BJG Trust Counterclaims").  Doc. 37.  Those counterclaims are not at issue in this order.

[4] Scott is not a plaintiff as to Counts 1 and 2 of Evan's Amended Complaint.

## Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Faiella v. Fed. Nat'l Mortg. Assoc., 928 F.3d 141, 145 (1st Cir. 2019). "A genuine issue of material fact only exists if a reasonable factfinder . . . could resolve the dispute in that party's favor." Town of Westport v. Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017) (internal quotation marks and citation omitted).

## Background

### A. BJG Trust & CLG Trust

In 1996, Chester and Barbara Gray each created a trust. Doc. 65-4 (creating the 1996 CLG Trust); Doc. 65-4 (creating the 1996 BJG Trust). The two trusts reserved the right of the grantors (Chester and Barbara) to revoke or modify the trusts. Doc. 65-5 at 22; Doc. 65-4 at 22.

Between 2010 and 2011, Attorney Nicholas Harvey served as Chester's and Barbara's estate planning counsel. Chester, who was a retired lawyer, paid particular attention to the details of the estate plans. Ultimately, Attorney Harvey prepared two trust documents, which Barbara and Chester executed in 2011: the "First Amendment and Complete Restatement of the Chester L.

Gray, Jr. Trust of 1996" and the "First Amendment and Complete Restatement of the Barbara J. Gray Trust of 1996," which have been referred to throughout this litigation as the CLG Trust and the BJG Trust, respectively.

Barbara and Chester served as the initial co-trustees of both the CLG Trust and the BJG Trust, which were revocable until their respective settlor's death, at which point they became irrevocable under their provisions. Among the assets included in the CLG Trust is real estate located in Grafton and Springfield, New Hampshire.

The CLG Trust exists, in part, to hold and maintain the Grafton and Springfield real estate for Barbara and Chester's descendants "for as long as is reasonably and prudently possible." Doc. 62-3 at 4. To that end, the CLG Trust provides that, after Chester's death, the real estate will be held in a Continuing Trust, which shall exist until certain conditions outlined in Article 2.2.A(2)-(4) of the CLG Trust are met.

In addition, after Chester's death, the CLG Trust provides for the creation of a "maintenance fund" for the real estate, which is to be funded with assets valued at $820,000 adjusted for inflation. After all of the CLG Trust provisions have been satisfied, the remainder of the CLG Trust's assets are to be distributed equally among Barbara and Chester's three sons, Skip, Scott, and Evan.

4

The BJG Trust provides for the management of Barbara's assets before and after her death.  Barbara died on April 9, 2013.  Following Barbara's death, Chester became sole trustee of both trusts.  Chester remained as trustee of both the BJG Trust and the CLG Trust until his death on April 26, 2017.

The BJG Trust includes provisions that became effective after the death of both Barbara and Chester.  One of the principal provisions of the BJG Trust is Article 2.4.A which provides:

> If at the time of the death of my husband and myself, the amount of liquid assets held in the continuing trust for real estate located in Grafton and Springfield, New Hampshire as set forth in my husband's trust is less than [$820,000 adjusted for inflation],[5] I direct that my trustee distribute from my trust an amount of property that will increase the sums held in said continuing trust of my husband's to [$820,000 adjusted for inflation].

Doc. 62-4 at 4.  The "remainder of the trust property" is to be distributed equally among Skip, Scott, and Evan.  Id.

After Chester's death, Skip, Scott, and Evan became co-trustees of the BJG Trust, and Skip became sole trustee of the CLG Trust.  Skip petitioned the probate division of the New Hampshire Circuit Court to open a probate administration and

---

[5] The BJG Trust directs the inflation adjustment to be calculated "in accordance with the percentage changes in the Consumer Price Index – All Urban Consumers (Northeast Region) from January 1, 2011 until January of the year of my death . . . ."  Doc. 62-4 at 4.

appoint him to administer the CLG Estate.  The New Hampshire
court granted Skip's petition for estate administration and
appointed him Executor on June 14, 2017.

B. Pre-Litigation Correspondence

Skip originally retained Attorney Catherine Richmond of
Stebbins Bradley, PA, to represent him as fiduciary of the CLG
Trust and CLG Estate, before retaining current counsel Attorney
Ralph Holmes.  After Chester's death in late April 2017, Skip's
counsel engaged in correspondence with Evan which continued
throughout 2017 and 2018 and culminated in this litigation begun
by Evan.

On December 12, 2017, Evan sent to Skip, by registered
mail, a letter entitled "Notice of Claims and Demand for
Payment."  Doc. 62-8 at 1.  In the letter, Evan listed Skip
twice, once as executor of the CLG Estate and once as trustee of
the CLG Trust.  In the letter, Evan explained his claims:

> PLEASE TAKE NOTICE, pursuant to New Hampshire RSA
> Section 556:2, that Evan W. Gray, as Trustee of the
> Barbara J. Gray Trust of 1996, asserts the following
> claim(s) against Chester L. Gray, III, Executor of the
> Estate of Chester L. Gray, Jr., and Chester L. Gray
> III, Trustee of the Chester L. Gray, Jr., Trust of
> 1996:
>
> Claim(s) for breaches of fiduciary duties by decedent
> Chester L. Gray, Jr., as former sole trustee of the
> Barbara J. Gray Trust of 1996 from April 9, 2014,
> through April 26, 2017 (the "Period"), by: (i)
> managing the investments of the Trust for his sole
> benefit as income beneficiary of the Trust during the

6

Period, to the detriment of the Trust and the remainder beneficiaries of the Trust, including without limitation by concentrating the investments of the trust solely in municipal bonds and utility stocks bearing high levels of current income but little or no capital growth, such that the capital value of the Trust was $100,000 (One Hundred Thousand Dollars) less at the end of the Period than at the beginning of the Period, whereas the Standard & Poor 500 equity index increased 50% during the Period; (ii) distributing capital of the Trust to himself in violation of Paragraphs 2.3.A.(2) and (4) of the Trust instrument; and (iii) using capital removed improperly from the Trust to purchase real property in the center of the town of Grafton, New Hampshire, and donating such real property to the town of Grafton, New Hampshire, for the decedent's own charitable benefit, to the detriment of the Trust and the remainder beneficiaries of the Trust.

PLEASE TAKE FURTHER NOTICE, pursuant to New Hampshire RSA Section 556:2,that based on the foregoing breaches, Evan W. Gray, as Trustee of the Barbara J. Gray Trust of 1996, DEMANDS that the Estate of Chester L. Gray, Jr., and the Chester L. Gray, Jr., Trust of 1996 pay to the Barbara J. Trust of 1996 damages in an amount to be determined but not less than $850,000 (Eight Hundred and Fifty Thousand Dollars).

PLEASE TAKE FURTHER NOTICE that, pursuant to New Hampshire RSA Section 564-B:5-505(b)(1), because, according to Chester L. Gray, III, Executor, as stated in his Petition for Estate Administration, the Estate of Chester L. Gray, Jr., equals only $19,000 (Nineteen Thousand Dollars), and is inadequate to satisfy the claim(s) notified hereby, the property of the Chester L. Gray Jr. Trust of 1996 is subject to such claims.

PLEASE TAKE FURTHER NOTICE that, pursuant to New Hampshire RSA Section 554:19.I and the first paragraph of Article 2.2 of the First Amendment and Complete Restatement of the Chester L. Gray, Jr., Trust of 1996, the claim(s) notified hereby are "debts of the deceased" and "obligations" that must be paid before any "Continuing Trust" may be established under Article 2.2.A of the First Amendment and Complete Restatement of the Chester L. Gray, Jr., Trust of 1996.

Doc. 62-8 at 1-2.  Evan signed the letter as Evan Gray, Trustee, identifying the trust of which he was trustee as the "Barbara J. Gray Trust of 1996."  Id. at 2.

On January 5, 2018, Attorney Holmes, on Skip's behalf, sent a letter to all the trustees of the BJG Trust, enclosing Evan's December 12 letter.  In the January 5 letter, Attorney Holmes articulated Skip's understanding of the claims given Evan's statements in the December 2017 letter, noted that Evan demanded that the CLG Estate and CLG Trust pay the BJG Trust a sum not less than $850,000, and stated that the CLG Estate would defend the claim and seek recovery of costs, which it was likely to receive "[i]nsofar as the Claim is successfully defended."  Doc. 62-9 at 1-2.  Attorney Holmes also stated that Evan would need to prove bad faith in order to establish liability.  Id. at 2.

On February 9, 2018, Evan replied to the January 5 letter from Attorney Holmes, stating that Attorney Holmes had been "deliberately misleading" in his use of "defined terms."  In the next sentence, Evan stated that "[t]he Claims are asserted on behalf of the BJG Trust, not me individually."  Doc. 62-10 at 1. He added that "the trustees of the BJG Trust have a duty to pursue such Claims," and that, if the CLG Estate or CLG Trust was "foolish enough" to contest the Claims, "they likely will have statutory responsibility to reimburse the BJG Trust for its

attorney fees and other costs after the BJG Trust prevails on the Claims . . . ." Id. at 1-2.

On February 12, 2018, Evan sent another letter to Skip, this time writing "in my capacity as a qualified beneficiary of the" CLG Trust. Doc. 62-11 at 1. In the February 12 letter, Evan stated that he had sent the December 12 letter in "my capacity as a trustee of the Barbara J. Gray Trust of 1996." Id. Evan then urges Skip "promptly to negotiate with the BJG Trust to resolve the Claims without the expense of litigation . . . ." Id. at 2.

Evan filed this lawsuit on June 13, 2018.

## Discussion

Skip moves for summary judgment as to Counts 1 and 2 of Evan's Amended Complaint to the extent Counts 1 and 2 were brought outside Evan's capacity as trustee of the BJG Trust. Skip contends that Evan failed to provide the notice and demand required under RSA 556:1. Evan responds, contending that he provided sufficient notice under RSA 556:1 and that Skip waived the notice requirement in any event.

Skip also moves for summary judgment as to Count II of the CLG Estate Counterclaims, contending that the plain meaning of Article 2.4.A of the BJG Trust and Article 2.2 of the CLG Trust requires a determination of the pour over amount only after all

obligations against the CLG Trust have been paid or provided for.  In his summary judgment motion, Skip also contends that Evan cannot succeed on his affirmative defense of equitable estoppel.

Evan responds, arguing that the BJG Trust language does not reference the CLG Trust's payment of claims against it and that the pour over amount, if any, would be set at the time of the surviving spouse's (i.e., Chester's) death.  Evan also responds that there are genuine disputes of material fact as to his defenses of equitable estoppel and unclean hands, which prevent the entry of summary judgment in Skip's favor.  Skip did not file a reply.

A. Jurisdiction

Any time "a colorable question exists," the court is obliged to inquire into its own jurisdiction.  Watchtower Bible and Tract Soc. of New York v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013).  The claims in this case touch on matters relating to the probate of the CLG Estate, which the court understands remains open in the New Hampshire Probate Court.

"The probate exception is a judge-made doctrine stemming from the original conferral of federal equity jurisdiction in the Judiciary Act of 1789."  Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 24 (1st Cir. 2010).  The probate exception "reserves to

state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006) (citations omitted). "Where the exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction." Jimenez, 597 F.3d at 24 (quoting Lefkowitz v. Bank of N.Y., 528 F.3d 102, 106 (2d Cir. 2007)) (alteration omitted).

Having examined the claims and counterclaims as relevant to Skip's motion for partial summary judgment, the court is satisfied that the probate exception does not apply to those claims and counterclaims.[6] Evan's claims do not fall within the probate exception to the extent the relief sought is a creditor claim against the CLG Estate, rather than exercise of any jurisdiction over the assets of the CLG Estate while they remain

---

[6] Depending on the circumstances, if Evan prevails on his claims, the court may lack jurisdiction to order certain relief against the CLG Estate while it remains in probate. See Jimenez, 597 F.3d at 24.

under the probate court's jurisdiction. Likewise, while the
declaratory judgment requested in Count II of the CLG Estate
Counterclaims may, in part, bind the state probate court to a
particular interpretation of the trusts' terms, such a judgment
is not outside this court's jurisdiction. See Jimenez, 597 F.3d
at 24; Turton v. Turton, 644 F.2d 344, 347 (5th Cir. 1981)
(observing that the probate exception does not prohibit a
federal court from issuing, for example, "a declaratory judgment
that a probated will entitles [a devisee] to twenty percent of
the net estate"). The court turns next to the merits of the
arguments on summary judgment.

    B. Notice of Claim (Counts 1 and 2 of Evan's Amended
       Complaint)

    Skip argues that, under RSA 556:1 and RSA 556:3, Evan
failed to provide sufficient notice of a claim against the CLG
Estate in any capacity outside his capacity as trustee of the
BJG Trust. Skip contends that, while Evan provided notice of
the claim in his capacity as a trustee of the BJG Trust, he
expressly disclaimed any claim in his personal capacity. Evan
argues that Skip waived the demand requirements of RSA 556:1 and
RSA 556:3 and that he provided notice of his claims that meets
the requirements of RSA 556:1 and RSA 556:3.

    In New Hampshire, no action shall be sustained against an
estate administrator unless a demand has been exhibited to the

administrator and payment has been demanded within six months after the original grant of the administration.  RSA 556:1, 556:3.[7]  "A notice sent to the administrator or his agent by registered mail, setting forth the nature and amount of the claim and a demand for payment, shall be deemed a sufficient exhibition and demand."  RSA 556:2.

## 1.  Notice of Claims

Evan asserts that he sent a notice by registered mail that complied with the requirements of RSA 556:1 and 556:3 on December 12, 2017, within six months after Skip was granted administration of the CLG Estate on June 20, 2017.[8]  Evan states that he sent the letter in his "representative capacity as a trustee of the BJG Trust," for the benefit of the remainder beneficiaries of the BJG Trust, therefore including Evan in his individual capacity.  Evan also asserts that the letter was sufficient to satisfy the notice requirement as to his individual capacity because Skip was made aware of the claims

---

[7] "No action shall be sustained against an administrator if begun within six months after the original grant of administration, nor unless the demand has been exhibited to the administrator and payment has been demanded."  RSA 556:1.  "No such action shall be sustained unless the demand was exhibited to the administrator within six months after the original grant of administration, exclusive of the time such administration may have been suspended."  RSA 556:3.

[8] Doc. 62-6; Doc. 62-7.

through it, which, he contends, is the purpose of the notice statute.

Evan's December 12 letter states that he is asserting a claim "as Trustee of the Barbara J. Gray Trust of 1996." Doc. 62-8 at 1. Evan signs the document as "Trustee" of the BJG Trust. Id. at 2. Therefore, Evan notified Skip about the claims in Counts 1 and 2 of his Amended Complaint made in his capacity as trustee of the BJG Trust, but he failed to timely notify Skip of any claim made in Counts 1 and 2 outside that capacity.

Evan argues that, despite the language of his letter, the purpose of RSA 556:1 was achieved because Skip was placed on notice about the existence of the claims against the trust. While it is true that the letter Evan sent to Skip gave Skip notice about one particular type of claim against the CLG Estate – one brought by a trustee of the BJG Trust – Skip was not properly notified about the nature of Evan's later-asserted claim brought in a different capacity.

The effect of Evan's letter giving notice to Skip as to claims only on behalf of the BJG Trust is underscored by their subsequent communications. After receiving the letter, Skip, through Attorney Holmes, wrote a response to the trustees of the BJG Trust dated January 5, 2018, reciting his understanding that the claims involved the trustees of the BJG Trust, not any claim

by a beneficiary. Doc. 62-9 at 1 ("I write to you in your roles as the Trustees of The Barbara J. Gray Trust of 1996 . . . ."). Skip also notes his understanding that Evan's potential claim demanded that a sum be paid to the BJG Trust. Skip's January 5 letter does not suggest that Skip understood that Evan could potentially bring a claim in which he recovered personally.

Indeed, Evan reinforced Skip's understanding of the claims in Evan's own reply to Skip's January 5 letter, where, after criticizing Attorney Holmes for being "deliberately misleading" in the January 5 letter, Evan stated that "[t]he Claims are asserted on behalf of the BJG Trust, not me individually." Doc. 62-10 at 1-2. Evan argues that this statement was "a single, isolated sentence" in a letter irrelevant to the demand requirement, because the notice had already been provided through the December 12 letter. Evan's statement that the claims would not be brought by him individually, however, undercuts his argument that RSA 556:1 was satisfied because Skip was provided general knowledge about the nature of the claims through the December 12 letter.

In sum, Evan's December 12 letter provided notice of a specific claim in which Evan carefully and uniformly identified each party in a particular capacity or capacities. Skip cannot be faulted for relying on Evan's description of his own claims, and Evan cannot send a letter, for the purpose of providing

notice of claims under RSA 556:1, in which he says one thing but means another and then expect that its recipient will divine that contrary, unstated meaning.  Therefore, Evan did not provide sufficient notice under RSA 556:1 that the claims made in Counts 1 and 2 of his Amended Complaint were being made in his individual capacity as well as in his capacity as trustee of the BJG Trust.

### 2. Waiver of Demand Requirements

Next, Evan contends that the statutory demand requirement is waived if the estate administrator denies liability when the claim is presented or by a refusal to pay at that or any other time.  Evan asserts that Skip waived the demand requirement through his January 5, 2018, response to the December 12 notice letter.

Evan relies on Dewey v. Noyes, in which the New Hampshire Supreme Court held that an estate administrator can waive a statutory demand requirement if he denies "all liability when the claim is presented" or provides an "absolute refusal to pay it at that or any other time."  76 N.H. 493, 493 (1912).[9]  In Dewey, the Supreme Court observed that the plaintiff had called the defendant and explained the claim, but the defendant

---

[9] The language of the statutory demand requirement in Dewey is similar to the language in RSA 556:1.

responded that "she would not pay the plaintiff for <u>any claim or</u> <u>matter whatsoever</u>, and that it would do no good to put a statement of it in writing for her." <u>Id.</u> (emphasis added).

The New Hampshire Supreme Court has subsequently elaborated on this rule, stating that "[a]n executor has a right to be informed of the creditor's claim . . . but he may lose this right by denying liability in advance of the presentation of the creditor's claim." <u>Frost v. Frost</u>, 100 N.H. 326, 328 (1956). By contrast, "the failure to exhibit the claim was not excused because there 'was neither denial nor recognition of liability, and neither promise nor refusal to settle.'" <u>Id.</u> (quoting <u>Watson v. Carvelle</u>, 82 N.H. 453, 457 (1926)).

In his January 5, 2018, letter, Skip did not deny all liability in his response to Evan's notice, and he did not foreclose the possibility of settlement. It is true that, in the letter, Skip asserts that the CLG Estate will seek to recover costs, but he notes that he may only recover those costs "[i]nsofar as the Claim is successfully defended." Doc. 62-9 at 2. Skip merely asserted that he would seek costs if Evan moved forward with the claim and that he would likely receive costs if he prevailed in defense. He did not deny all liability for any claim, nor did he make any absolute statement refusing to settle. Therefore, Skip did not waive the notice requirement of RSA 556:1, and he is entitled to summary judgment in his favor

17

as to Counts 1 and 2 of the Amended Complaint to the extent
Counts 1 and 2 are brought by Evan outside his capacity as
trustee of the BJG Trust.[10]

   C. <u>BJG Trust "Pour Over" Provision (Count II of CLG Estate
      Counterclaims)</u>

   Next, Skip contends that he is entitled to summary judgment
as to Count II of the CLG Estate Counterclaims, in which he
requests a declaratory judgment that "in the event that the
Plaintiff's action results in an underfunding of the Maintenance
Fund, the Counterclaim/Crossclaim Defendants, as Co-Trustees of
the BJG Trust, shall be required to make up for the deficiency
created."  Doc. 36 ¶ 35.  In support, Skip contends that Article
2.4.A of the BJG Trust and Article 2.2 of the CLG Trust require
a pour over in those circumstances.  Evan opposes summary
judgment on the grounds that the unambiguous language of the
trust does not require such a distribution, that his "Fifth
Defense" of equitable estoppel prevents Skip from enforcing this

_____

   [10] Embedded in his opposition to Skip's motion for partial
summary judgment, Evan requests an opportunity to amend his
complaint "to assert a petition for relief pursuant to RSA
556:28, including additional facts that otherwise are
unnecessary for purposes of the present motion" if his arguments
as to notice under RSA 556:1 are to fail.  Doc. 65-1 at 18 n.2.
Evan improperly presents his motion to file an amended complaint
within his opposition memoranda, which is not allowed in the
District of New Hampshire.  LR 7.1(a)(1) ("Objections to pending
motions and affirmative motions for relief shall not be combined
in one filing.").

provision of the BJG Trust, and that his "Sixth Defense" of unclean hands prevents Skip from enforcing this provision of the BJG Trust.

At this time, the court addresses only one matter with respect to Skip's motion for summary judgment as to Count II of the CLG Estate Counterclaims. Specifically, as to the "Sixth Defense," which Evan entitled "unclean hands," Evan contends that Chester's undue influence on Barbara renders the BJG Trust, or portions thereof, void. He states:

> One set of facts barring Defendant's counterclaim on the basis of unclean hands involves the undue influence by which [Chester] alone directed the terms of the 2011 BJG Trust Instrument, at a time when [Barbara] had long been in a debilitated state cognitively and physically, and was completely dependent upon [Chester] for her material existence.

Doc. 65-1 at 23.[11] To the extent Evan argues that Skip should not be granted equitable relief because of Chester's unclean hands in using undue influence with regard to the establishment of the BJG Trust in 2011, the unclean hands doctrine does not appear to be applicable to Skip in this case.

"It is old hat that a court called upon to do equity should always consider whether the petitioning party has acted in bad

---

[11] In his "Sixth Defense," stated in his Answer to the CLG Estate Counterclaims, Evan wrote, inter alia, the following: "The Counterclaims also are barred by the unclean hands of [Chester] based on additional actions by [Chester], including without limitation [Chester's] procurement by undue influence of benefits under the BJG Trust." Doc. 56 at 10-11.

faith or with unclean hands." Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995).  "The doctrine of unclean hands only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'"  Id. (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933)).  Here, Chester's alleged actions do not prevent Skip, as a successor trustee of the CLG Trust, from seeking a declaratory judgment setting out the legal rights of the CLG Trust concerning the meaning of the terms of the BJG Trust and the CLG Trust about which there is a substantial controversy.  See Order on Motion to Dismiss CLG Estate Counterclaims, doc. 54 at 9 ("A substantial controversy exists about the interpretation of the terms of the BJG Trust and the CLG Trust.").

Furthermore, an affirmative defense of unclean hands does not appear to be appropriate in addressing the alleged undue influence of Chester because New Hampshire law provides a statutory cause of action to contest the validity of a trust or portions of a trust on the ground of undue influence.  RSA 556-

B:4-406(a), (b).[12]  Therefore, as part of his "Sixth Defense" to

the CLG Estate Counterclaims, Evan appears to assert a claim of

undue influence under RSA 556-B:4-406.  In addition, in response

to Skip's motion for summary judgment, Evan cites the standards

applicable when a petitioner seeks a declaration that a trust is

void because of undue influence.  Doc. 65-1 at 23 (citing Estate

of Cass, 143 N.H. 57 (1998), Archer v. Dow, 126 N.H. 24 (1995),

and In re Stedman 1989 Trust 2013 Restatement, 2016 WL 7451406

(N.H. Nov. 10, 2016)).

_____

[12] RSA 564-B:4-406 states the following in relevant part:

> (a) A trust is void to the extent that it was not
> validly created in accordance with this chapter or its
> creation was induced by fraud, duress, or undue
> influence.

> (b) A person may commence a judicial proceeding to
> contest the validity of a trust within the earlier of:

> (1) in the case of a trust that was revocable at the
> settlor's death, 3 years after the settlor's death;

> (2) in the case of an irrevocable trust, including a
> formerly revocable trust that has become irrevocable,
> 3 years after the trustee sent to the beneficiary a
> notice described in RSA 564-B:8-813(c)(3); or

> (3) in the case of an irrevocable trust, including a
> trust that was revocable at the settlor's death or a
> formerly revocable trust that has become irrevocable,
> 180 days after the trustee sent the person a copy of
> the trust instrument and a notice informing the person
> of the trust's existence, the trustee's name, address,
> and telephone number, and the time allowed for
> commencing a proceeding to contest the validity of a
> trust.

While Evan pled this claim as a defense, "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court <u>must</u>, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2) (emphasis added).  Under Rule 8(c)(2), it appears that the court must treat as a counterclaim that part of Evan's Sixth Defense which asserts that Chester exercised undue influence over Barbara with respect to the BJG Trust.

Therefore, the court must decide the legal issue of how to address Evan's apparent undue influence claim, which was pled as an affirmative defense, before the court can resolve Skip's motion for summary judgment on Count II of the CLG Estate Counterclaims.  The parties, however, will be given the opportunity to brief this procedural issue before the court rules on it.

<u>Conclusion</u>

For the foregoing reasons, Skip's motion for partial summary judgment (doc. no. 62) is granted in part.  Summary judgment is granted in favor of Skip to the extent Evan's claims in Counts 1 and 2 of his Amended Complaint are brought outside his capacity as a trustee of the BJG Trust.

Evan is directed to show cause on or before December 19, 2019, why the court should not, in the interest of justice, treat that portion of his Sixth Defense discussed above asserting undue influence as a counterclaim. Skip is directed to file a response on or before December 30, 2019, and Evan may reply to Skip's response on or before January 6, 2020, if necessary. To the extent that there is an issue concerning any statute of limitations applicable to the undue influence claim the parties shall address it. The court stays ruling on the merits of Skip's motion for summary judgment as to Count II of the CLG Estate Counterclaims until briefing and ruling on this issue is completed.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

December 9, 2019

cc:   Counsel of Record