Exhibit 1



43 Constitution Drive, Suite 100 | Bedford, NH 03110
603.627.3838

September 24, 2019

Mr. Ralph Holmes
McLane Middleton
900 Elm Street
Manchester, NH 03101

Re: Evan W. Gray v. Chester L. Gray III

Dear Attorney Holmes:

① I am a CPA in a full-time active practice and provide accounting, auditing and consulting services to individuals and business clients. My practice has also included and continues to include advising trustees and others regarding prudent investment.

② I have reviewed the information that your office has provided me through the date of this letter, including the monthly Merrill Lynch statements for the Barbara J. Gray Living Trust (the "Barbara Trust") for the period January 1, 2013 through April 30, 2017; the monthly Merrill Lynch statements for the Chester L. Gray Living Trust (the "Chester Trust") for that same period, and the Morgan Stanley account statements for Chester L. Gray, Jr's Individual Retirement Account (the IRA) for that same period; as well as the tax returns for Chester L. Gray, Jr (Chester) for the years 2013 through 2017; and finally various trade confirmations that were included with the investment statements for the accounts listed above.

③ Among the information I have reviewed are copies of the governing documents of the Barbara Trust and the Chester Trust (collectively, the "Trusts"). The residuary provisions of the Trusts benefit equally Chester L. Gray III, Evan Gray, and Scott Gray (collectively, the "Remaindermen".). The Trusts provide that distribution to the Remaindermen shall be made upon the death of the successor to die of the grantor of the Trusts.

④ I have summarized the activity in the Barbara Trust for the period from her date of death through Chester's date of death, the income during that period, and the distributions made to the Chester Trust from the Barbara Trust. The only distributions of principal were made in 2015 and 2016, and in both cases were less than the amount that the beneficiary was authorized to withdraw by paragraph 2(A)(4) of the Barbara Trust.

⑤ I have also examined the investment allocation for the Trusts and the IRA. As the beneficiaries of the IRA are equally the Remaindermen, in my opinion, it is appropriate to consider the investment allocation for the Trusts and the IRA in the aggregate. Following the death of Barbara Gray (Barbara), Chester was the owner of the IRA and the sole trustee of the Trusts. He would have known that the Trusts and the IRA benefited the Remaindermen equally and that his management of these resources in terms of investment selection,

Evan W. Gray v. Chester L. Gray III
Page 2

September 25, 2019

(6) diversification and withdrawal should appropriately be looked at from a global perspective across the three entities relative to the true interest of the Remaindermen.

I have summarized the investment allocation by asset class for the three entities for the month immediately before Barbara passed away, and at December 31 for each year thereafter. Immediately prior to her date of death, 41.7% of the funds of the Trusts and the IRA were invested in fixed income securities, 46.19% in a broad array of equities, 11.02% in certificates of deposit, and the balance in cash. In the years following her date of death, the allocation gradually shifted to favor equities, such that by the time at which Chester passed away the allocation was 38.9% to fixed income securities, 58.73% in equities and the balance in cash. An allocation of 60% equities and 40% bonds has long been used as a common allocation guideline in investment policies to provide for current income, growth in principal and some protection against volatility in the stock market.

(7) In my opinion, this represents a reasonable and prudent allocation of funds that appropriately balanced the interests of the income beneficiary (Chester) against those of the Remaindermen. Looked at in isolation, the investment allocation in the Barbara Trust certainly favored the interests of the income beneficiary over those of the Remaindermen. However, because the Barbara Trust has the same three beneficiaries as the Chester Trust and the IRA it does not make sense to examine it in isolation.

(8) Insofar as principal withdrawals that Chester made from the Barbara Trust might have been excessive (they were not) and/or ill-timed, the Remaindermen have suffered no loss. If Chester had not withdrawn these funds from the Barbara Trust he would have done so from the Chester Trust and/or IRA over which he had all ownership rights. There is no expense that would have been uniquely appropriate to or required to be made from the Barbara Trust. Again, Chester would have known that the Remaindermen would be impacted the same regardless of the source of payment.

(9) As the beneficiaries are the same for each of the Trusts and the IRA, no beneficiary was harmed by the investment allocation in the Barbara Trust. To the contrary, the manner in which the assets were allocated resulted in _more_ money, on an after-tax basis, being available to the three beneficiaries than would otherwise have been the case. This is because the assets held in the Chester Trust were in includible in his gross estate and therefore received a step up in basis when he passed away. As a result, the appreciation in the value of the securities held by the Chester Trust at the time of his death escaped income taxation. In this situation, given that the beneficiaries of the two trusts are the same, it would behoove a prudent investor to make the investments that are mostly likely to increase in value (equities) in the Chester Trust in order to take advantage of the step-up in basis.

(10) Had the trustee instead rebalanced the portfolio in the Barbara Trust to include a larger allocation to equities, he would have needed to sell bonds in the Barbara Trust, and in order to avoid an allocation to equity securities that was too large, would also have needed to liquidate some of the securities in the Chester Trust and likely incurred income taxes on the capital gains realized in that account. Not only would the securities in

the Barbara trust have not received a step up in basis at Chester's death, but there would have also been less money in the Chester Trust as a result of the income taxes paid.

In summary, when examined in the aggregate, the investment allocation in the Barbara Trust was both reasonable and prudent, and was done in a manner that minimized the income tax eventually payable by the beneficiaries. In my opinion, no remaindermen has suffered any loss and no reasonable trustee would have brought this complaint, given the fact that the beneficiaries are the same for both trusts and the IRA and any recovery by the Barbara Trust from the Chester Trust would simply reduce the amount payable to the beneficiaries from the Chester Trust and increase the amount payable to the beneficiaries of the Barbara Trust by the same amount, not to mention the cost and expense of this litigation which further depletes the net inheritance of the Remaindermen.

Sincerely,

Frank D. Saglio, CPA
Wipfli, LLP