Exhibit 1



October 16, 2019

Mr. Ralph Holmes
McLane Middleton
900 Elm Street
Manchester, NH 03101

Re: Evan W. Gray v. Chester L. Gray III

Dear Attorney Holmes:

① You have asked me to comment on whether Chester L. Gray, Jr. ("CLG") in his administration of the Barbara J. Gray Trust (the "BJG Trust") acted in good faith in his financial administration of the BJG Trust following the death of Barbara J. Gray ("BJG") in light of Article 4.3 of the Trust, which provides "the trustee shall not be liable for any action taken or omitted in good faith pursuant to such provisions". For the reasons set forth below, I am prepared to testify that all of his actions were undertaken in good faith.

② As explained in my prior report, I believe that the proper way to evaluate the investment performance of this trust is in the context of CLG's management of his own trust and IRA because all were to benefit his sons equally upon his death. The investments owned in the two trusts and the IRA collectively were reasonably diversified and the concentration of equities in his trust benefitted the remaindermen because these appreciating assets were entitled to a step-up in tax basis upon his death. This investment approach which benefitted the beneficiaries was certainly in good faith.

Even if the investments in the BJG trust are looked at in isolation without reference to the CLG Trust and IRA, they were appropriate and held in good faith. The Trust provides in Article 4.11.A that the trustee may:

③ Invest and reinvest in any bonds, stocks, mutual funds, common trust funds (whether or not any funds are managed by the trustee or an affiliate of the trustee), annuities, life insurance contracts, notes, bank deposits, mortgages, partnerships, limited liability companies, investment companies, real estate investment trusts, options, future and securities of any type or form and other property of any kind, real or personal, <u>irrespective of any statute or rule of any state or other jurisdiction limiting the investment of fiduciary funds.</u>

This granted the trustee significant liberality of discretion in the investment of assets.

Further, the Trust provides in Article 4.11.B that the trustee may retain legacy assets as follows:



> Continuation of Investments: To continue to hold any property originally constituting the trust property or at any time thereafter added thereto by any person, although not of a type or constituting a diversification considered proper for trust investments, without liability for any loss resulting to the trust by reason of continuing to hold such property



This permitted Chester following Barbara's death to retain any asset "not of a type [fixed income, equity or alternative] or quality [risk] or constituting a diversification considered proper for trust investments". Per my attached analysis of the holdings of the BJG Trust the concentration of fixed income securities was overwhelmingly due to the retention of legacy assets as permitted under Article 4.11B. This investment mix was wholly authorized by the terms of the trust quoted above and done in good faith.



Further, insofar as CLG as beneficiary may not have delivered to himself as trustee a written demand on the first day of the month to exercise his right to withdraw principal under his five-by-five power under Article 2.3A.(4) any such omission would have been in good faith. As I documented in my prior report, CLG in fact withdrew very little principal. Any failure to perform this ministerial act of documentation cannot reasonably be described as in bad faith.



Mr. Lisle's opinion that CLG as trustee of the BLG Trust following BJG's death needed to consult with the beneficiaries to develop a consensual investment plan is not in keeping with either my reading of the trust or understanding customary practices of trust administration in New Hampshire. I have discussed the relevant investment provision of the trust above and which CLG honored. Subject to his responsibilities to provide periodic accounting information and respond to reasonable beneficiary requests for information, NH trustees manage investments according to their own best judgement.



As explained in my prior report, I am a CPA in a full-time active practice and provide accounting, auditing and consulting services to individuals and business clients. My practice has also included and continues to include advising trustees and others regarding prudent investment.



I have reviewed the information that your office has provided me through the date of this letter, including the monthly Merrill Lynch statements for the Barbara J. Gray Living Trust (the "Barbara Trust")for the period January 1, 2013 through April 30, 2017; the monthly Merrill Lynch statements for the Chester L. Gray Living Trust (the "Chester Trust") for that same period, and the Morgan Stanley account statements for Chester L. Gray, Jr's Individual Retirement Account (the IRA) for that same period; as well as the tax returns for Chester L.

October 16, 2019

Gray, Jr (Chester) for the years 2013 through 2017; and finally various trade confirmations that were included with the investment statements for the accounts listed above. I have read Mr. Lisle's reports.



I am being compensated for my services at the rate of $230 per hour.

Sincerely,

Frank D. Saglio, CPA
Wipfli, LLP

BJG Trust - Analysis of Legacy Holdings

| | 3/31/2013 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 4/30/2017 |
|---|---:|---:|---:|---:|---:|---:|
| Fixed income (legacy) | 1,621,846.58 | 1,275,152.36 | 1,221,522.10 | 1,236,007.74 | 977,576.66 | 914,668.17 |
| Fixed income (new) | - | 123,980.00 | 236,451.25 | 251,498.20 | 274,660.65 | 314,870.55 |
| Equity | - | 142,010.70 | 164,569.60 | 76,204.40 | 220,270.35 | 254,455.25 |
| Cash | 16,234.49 | 8,033.65 | 9,059.63 | 11,763.04 | 0.06 | 0.02 |
| Total holdings | 1,638,081.07 | 1,549,176.71 | 1,631,602.58 | 1,575,473.38 | 1,472,507.72 | 1,483,993.99 |

| - | - | - | - | - | - |